IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM RUSSIA ) | |
| IN THE MATTER OF ) | Misc. No. 07- |
| PANAVTO ) | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Russia. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Russian authorities who are investigating a case of alleged fraud.

EVIDENCE SOUGHT:

The Russian authorities seek information about a company that may reside in this District and the Delaware Secretary of State's Office. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in Russia and

hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE,** the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 10/31/07

**Procurator General's Office
of the Russian Federation**

15A Bolshaya Dmitrovka  
Moscow, GSP-3, 125993, Russia

**Competent Authorities
United States of America**

28 .12.2006 Our ref. __18/377486-06__

Your ref. _____

**Request
for legal assistance in criminal
case No. 18/377486-06**

    The Procurator General's Office of the Russian Federation presents its compliments to you, expresses its desire to develop cooperation with the competent authorities of the United States of America in the field of combating crime and has the honour to request legal assistance in the investigation of a criminal case.

    The Procurator General's Office of the Russian Federation is inquiring into criminal case No. 18/377486-06 on the fact of repeated contraband removal of "Mercedes-Bents" motor-cars via the customs border of the Russian Federation by CJSC "Panavto" and "Panavto-Rostov" LLC in 2001-2002.

    The above-mentioned crimes are qualified by the investigation under Article 188 part 4 of the Criminal Code of the Russian Federation.

    By this date, the investigation has revealed the following:

    On December 14, 1995, in Moscow, the Closed Joint-Stock Company (CJSC) "Panavto" was incorporated; the main activity of the company was purchase and sale of "Mercedes-Bents" motor-cars. In 2001, CJSC "Panavto" was reregistered as CJSC "Panavto Co".

    In 2001, the Heads of CJSC "Panavto Co", namely Messrs. A.N. Pavlov and V.G. Vakulenko concluded contracts with the company "Rolligon G.m.b.H." to purchase "Mercedes-Bents" motor-cars. Contract price was US 9.800.000 dollars. The same year, the Director General of the Limited Liability Company (LLC) "Panavto-Rostov" (the city of Rostov-on-Don), Mr. V.I. Smirnov, concluded a contract with the company "Rolligon G.m.b.H." to purchase "Mercedes-Bents" motor-cars to the sum of US 4.900.000 dollars.

    According to documents (Cargo Customs Declarations, Invoices, Motor-car Notes, International Waybills, Contracts) the Company "Rolligon G.m.b.H." is located at: Germany, Frankfurt am Main, Oeder Weg 52-54, 60318.

    At the same time, under the information provided by the police of the city of Frankfurt am Main, the company "Rolligon G.m.b.H." is not registered in trade registers of municipal agencies and is not located at the address mentioned.

Translated into English by M. German

The incorporation documents of the company "Rolligon G.m.b.H." provided to the investigation by Mr. A.N. Pavlovich, Founder of CJSC "Panavto", reveal that the company is registered and located at: 913 N Market Street, Suite 1100, Wilmington, New-Castle, Delaware.

According to the information by the Criminal Division of the US Department of Justice, the company "Rolligon G.m.b.H." is registered at the address indicated, but actually it is not in the USA.

Under the above-mentioned contracts, CJSC "Panavto" and "Panavto-Rostov" LLC received "Mercedes-Bents" motor-cars which were transported via the customs border of the Russian Federation by unidentified persons with the deceitful use of accompanying documents drawn up on behalf of a non-existent company "Rolligon G.m.b.H.". In the above-mentioned documents the price of motor-cars acquired by CJSC "Panavto" and "Panavto-Rostov" LLC was 2-4 times reduced from the price of the manufacturing plant.

Thus, unidentified persons repeatedly, being members of the organized group, with the deceitful use of documents drawn up on behalf of the shell-company "Rolligon G.m.b.H." and inauthentic declaration had transported "Mercedes-Bents" motor-cars via the customs border of the Russian Federation in large amount (more than US 14.000.000 dollars).

According to information provided by the US competent authorities, the company "Rolligon G.m.b.H." was incorporated in the State of Delaware on 21.01.1997 in Corporation Department, file number 2710146. The registered agent of the company "Rolligon G.m.b.H." in Delaware is "AOS Group, Inc.", suite 1101, 913 North-Market Street, Wilmington, Delaware.

Under the data provided by the representative of "AOS Group, Inc." Mr. Feldman Alex, an employee of the company "Offshore Management International", located at: 13/15 Baron Krishyan Street, Riga, Republic of Latvia, forwarded instructions to the "AOS Group, Inc." authorizing the "AOS Group, Inc." to incorporate a company "Rolligon G.m.b.H." in Delaware.

Moreover, under the documents available (Apostille, Affidavit and Power of Attorney of 23.08.2001), Ms. Amanda P. Convey, Notary Public for Delaware, certified registration of the company "Rolligon G.m.b.H." in Delaware (registration No. 0158183). That very day, Mr. Sid Garnett, representative of the company "Rolligon G.m.b.H.", in the presence of the Notary Public for Delaware, Ms. Amanda P. Convey, declared the authenticity of the Power of Attorney of the company "Rolligon G.m.b.H." issued to the national of Russia, Ms. Nadezhda Moroz, on the basis of the Decision by the Board of Directors of 23.08.2001 to represent interests of the Company "Rolligon G.m.b.H." in the Russian Federation.

Under the information available, Mr. Sid Garnett is an employee of the company "American Incorporators Ltd" and a founder, in other words he is the person who is named as a founder in the company "Rolligon G.m.b.H." certificate of incorporation; the first Director of the company "Rolligon G.m.b.H." was Mr. Bruno David Goldberg who resigned in March 1999.

Within the criminal case in question it is highly important to determine the whole chain of delivery and contraband removal of "Mercedes-Bents" motor-cars via the customs border of the Russian Federation, the role of each Director of the net of companies "Panavto" in this removal, payment and sale of cars as well as the lawfulness of activity of the company "Rolligon G.m.b.H." which delivered "Mercedes-Bents"

Translated into English by M. German

motor-cars to Russia. In this regard it is necessary to interrogate a number of citizens of the United States of America as witnesses and perform other investigative actions.

Under the Treaty on Mutual Legal Assistance in Criminal Matters of June 17, 1999 between the Russian Federation and the United States of America, I respectfully ask you to commit the officers of the competent agencies to perform actions specified below:

1. To interrogate representatives of the company "IOS Group, Inc." (Suite 1101, 913 North-Market-Street, Wilmington, Delaware) as witnesses as to the questions listed below:

- What is the company's activity? When was it founded?
- Do the Directors of the company know Mr. Pavlovich Andrei Nikolayevich, Mr. Kovalenko Oleg Grigoryevich, Mr. Kushchenko Sergey Alekseevich, Mr. Vakulenko Viktor Grigoryevich, Mr. Smirnov Viktor Ivanovich, Mr. Savinykh Vladimir Alekseevich, Ms. Moroz Nadezhda Sergeevna, Mr. Klimnyuk Anatoly Vladimirovich, Mr. Feldman Alex, Mr. Bruno D. Goldberg and Mr. Philip Berwell? If so, when, where, why and under which circumstances did you make acquaintance?
- What did Mr. Alex Feldman apply for to the company "IOS Group Inc." to found a company "Rolligon G.m.b.H."?
- Who of the representatives of the company "IOS Group Inc." did work to found a company "Rolligon G.m.b.H." in Corporation Department? What did exactly they do? How and who paid for the work?
- Where are the instructions by Mr. Alex Feldman under which the company "IOS Group Inc." was authorized to set up the company "Rolligon G.m.b.H."? When, where, under which circumstances and how were the instructions received? Who were the instructions received from?
- Who, when, on the basis of which document were constituent documents of the company "Rolligon G.m.b.H.", which were later delivered to the Corporation Department, prepared?
- What regulates the activity of the company "IOS Group Inc." which is the registered agent of the company "Rolligon G.m.b.H."? What does the expression "registered agent" mean?

2. To interrogate employees of the Corporation Department of Delaware as witnesses as to the questions listed below:

- Do you know Mr. Pavlovich Andrei Nikolayevich, Mr. Kovalenko Oleg Grigoryevich, Mr. Kushchenko Sergey Alekseevich, Mr. Vakulenko Viktor Grigoryevich, Mr. Smirnov Viktor Ivanovich, Mr. Savinykh Vladimir Alekseevich, Ms. Moroz Nadezhda Sergeevna, Mr. Klimnyuk Anatoly Vladimirovich, Mr. Feldman Alex, Mr. Bruno D. Goldberg and Mr. Philip Berwell? If so, when, where, why and under which circumstances did you make acquaintance?
- Who of the representatives of the company "IOS Group Inc." did work to found a company "Rolligon G.m.b.H." in Corporation Department? What did exactly they do?

Translated into English by M. German

- Who of the representatives of the Corporation Department did work to found a company "Rolligon G.m.b.H." in Corporation Department? What did exactly they do? How and who paid for the work?
- What set of documents was delivered to the employees of the Corporation Department to set up the company "Rolligon G.m.b.H."? What kind of activity of the company "Rolligon G.m.b.H." was reflected in the constituent documents provided?
- What is the order of registration and establishment of companies in the United States of America in general and in particular in Delaware? Was a special order applied when registering the company "Rolligon G.m.b.H." by the Corporation Department of Delaware?

3. To interrogate Ms. Amanda P. Convey, Notary Public for Delaware, as a witness as to the order of certification of the company "Rolligon G.m.b.H." in Delaware; how and why this procedure was conducted; who and how the registration of certification of the company "Rolligon G.m.b.H." was paid; where the fact of certification of the company "Rolligon G.m.b.H." has been registered.

4. To interrogate Mr. Sid Garnett, employee of the company American Incorporators Ltd., the founder (that is the person named as a founder in the certificate of incorporation) of the company "Rolligon", as a witness as to the following questions:

- Do you know Mr. Pavlovich Andrei Nikolayevich, Mr. Kovalenko Oleg Grigoryevich, Mr. Kushchenko Sergey Alekseevich, Mr. Vakulenko Viktor Grigoryevich, Mr. Smirnov Viktor Ivanovich, Mr. Savinykh Vladimir Alekseevich, Ms. Moroz Nadezhda Sergeevna, Mr. Klimnyuk Anatoly Vladimirovich, Mr. Feldman Alex, Mr. Bruno D. Goldberg and Mr. Philip Berwell? If so, when, where, why and under which circumstances did you make acquaintance?
- When, who, under which circumstances and for what purposes was the company "Rolligon G.m.b.H." established? What is its activity? What is the area of its activity?
- Who represented interests of the company "Rolligon G.m.b.H." in the Russian Federation and in Moscow in particular?
- When, under which circumstances, who and why was Ms. Nadezhda Moroz proposed as an authorized person of the company "Rolligon G.m.b.H." in Moscow? How was Ms. N. Moroz notified of her being an authorized person of the company "Rolligon G.m.b.H."? Who directly communicated with her?
- What was Ms. N. Moroz activity? Who controlled her activity in Moscow and in the territory of the Russian Federation? How and how often were the services of Ms. N. Moroz paid?
- How, who and what were the grounds for the prices for "Mercedes-Bents" motor-cars delivered by the company "Rolligon G.m.b.H." to the Russian buyers be fixed?
- What bank or banks does the company "Rolligon G.m.b.H." hold settlement accounts with? Who is (or was) the manager of those funds?

Translated into English by M. German

- What were Mr. Philip D. Berwell's duties with the company "Rolligon G.m.b.H." in 1999-2001? What position did he hold in the company "Rolligon G.m.b.H." at that time?
- Does the company "Rolligon G.m.b.H." carry out any activity at present? If so, what kind of activity does it have? Does the company carry out activity under contracts or agreements with enterprises registered in the territory of the Russian Federation? What exactly Russian enterprises does "Rolligon G.m.b.H." have contractual relations?
- Does the company "Rolligon G.m.b.H." have any representative offices or branches in other countries? If so, where exactly and what is the activity of the company in those countries?
- Has the company "Rolligon G.m.b.H." concluded any contracts with the Concern "Daimler Chrysler AG" and the Russian company "Daimler Chrysler Avtomobili Rus" ("Dymeler Chrysler Motor-Cars Rus")? If so, when, where and under which circumstances were the contracts concluded? Are the above contracts working at present?
- How often, where and at what price were "Mercedes-Bents" motor-cars, delivered in 1999-2001 to the Russian Federation, purchased?
- To what companies, besides CJSC "Panavto" and LLC "Panavto-Rostov", when and in what volume were "Mercedes-Bents" motor-cars delivered by the company "Rolligon G.m.b.H."?
- Where are the financial and bookkeeping instruments as well as other documents connected with the company "Rolligon G.m.b.H." activity in 1999-2001?
- How many and what "Mercedes-Bents" motor-cars did the company "Rolligon G.m.b.H." purchase in 1999-2001 from the Concern "Daimler Chrysler AG" or paid to the Concern "Daimler Chrysler AG" under the instructions of the Russian buyers?
- Who, when and under which circumstances was the initiator for the company "Rolligon G.m.b.H." be included in the list of companies which are the receiver of goods from the Concern "Daimler Chrysler AG" for the Russian companies which buy goods of the Concern "Daimler Chrysler AG"?
- How did the company "Rolligon G.m.b.H." relate to the price policy of the Concern "Daimler Chrysler AG" for motor-cars produced? Why did Mr. Yu. Kriyums, employee of "Rolligon G.m.b.H.", insert prices for "Mercedes-Bents" motor-cars when drawing up invoices?
- Did the company "Rolligon G.m.b.H." have contractual relations with CJSC "Panavto", LLC "Askon Alliance", LLC "Ronest", LLC "Oventis M", LLC "Ilion Ltd", LLC "Jirant" (all located in Moscow), CJSC "Panavto-Rostov" (Rostov-on-Don), Opened customs warehouse "Atlas" (SIA ATLAS)? If so, when, where and under which circumstances were the contracts concluded? Why were they concluded? What contracts were concluded?
- Are there any banking guarantees (copies of documents) issued by the company "Rolligon G.m.b.H." in favour of the Concern "Daimler Chrysler AG" in the record-keeping offices or kept by Mr. Sid Garnett to secure payment for motor-cars delivered by the Concern to the company "Rolligon G.m.b.H."? If not, where the above documents may be?

Translated into English by M. German

- Were monetary funds from the Opened customs warehouse "Atlas" (SIA ATLAS) entered to the accounts of "Rolligon G.m.b.H."? If so, on the grounds of which contracts (agreements) were the services rendered? For what goods? What services were rendered?
- Were the letters sent to them by e-mail or there was correspondence in CJSC "Panavto" (Moscow), CJSC "Panavto-Rostov" (Rostov-on-Don)? If so, for what purpose, what was the content, who were they addressed to? Have the letters been kept in electronic carrier? If so, what kind of electric carriers were used? Where are they at present?
- What caused the revalue of "Mercedes-Bents" motor-cars delivered to CJSC "Panavto" and LLC "Panavto-Rostov" towards the decrease?
- Do you know Mr. Yuris Kriyums? If so, when, where and under which circumstances did you make acquaintance? Who introduced you? What was Mr. Yuris Kriyums occupation? What were his official duties (taking account of the fact that under the testimony of neighbours of the deceased, Mr. Kriyums, the latter and his brother, Mr. Peters Kriyums, lived in poverty, communicated, mainly, with persons of no fixed abode; Yuris suffered from liver disease; he did not work, but at the same time unknown persons often attended his flat, of "normal social status". In 2000-2001 the two brothers died under unexplained circumstances)?
- When, how and under which circumstances did Mr. Yu. Kriyums propose to Mr. Philip D. Berwell to hold the post of the Director Executive of the company "Rolligon G.m.b.H."?
- What did Mr. Yuris Kriyums look like? What were his characteristic features and particular marks? What did Mr. Kriyums tell about his state of health, family, circle of acquaintance and friends? Did Mr. Kriyums make plans for future?

4. To seize from the company "IOS Group Inc." the instructions by Mr. Alex Feldman, employee of the company "Offshore Management International", sent by the above-mentioned person to "IOS Group Inc." under which "IOS Group Inc." established the company "Rolligon G.m.b.H." in Delaware.

When the original documents are obtained, please, indicate when, where, from whom and what documents were received. When copies of documents or data from electronic data base are obtained, you are kindly requested to duly certify them.

Due to time sensitivity of the investigation, we would be grateful for the request be executed in full at the earliest possible date.

The criminal case under investigation does not infringe the interests of the United States of America, and materials received from you will not be used to the detriment of the interests of the USA and of its nationals.

The criminal case in question is not of political nature but of criminal one. The Procurator General's Office of the Russian Federation guarantees that the documents and data obtained during the course of request execution will be used for the purposes of the investigation only, to collect evidence and at the court session.

The Procurator General's Office of the Russian Federation thanks you in advance for cooperation and confirms its readiness to provide every kind of assistance to the law-enforcement agencies of the United States of America upon corresponding requests. Please, be assured of our highest consideration.

Translated into English by M. German.

Telephones of emergency communication in Moscow: 495-265-90-10, 495-265-91-96, fax 495-265-97-97.

You are kindly requested to forward the materials of the executed request at: Procurator General's Office of the Russian Federation, 15A Bolshaya Dmitrovka, Moscow, 101999, Russian Federation.

Enclosure:

1. Extract from the Criminal Code of the Russian Federation on 2 pages (Enclosure No. 1);
2. Extract from the Code of Criminal Procedure of the Russian Federation on 3 pages (Enclosure No. 2);
3. The Resolution on conducting of a seizure in the company "IOS Group Inc." on 2 pages (Enclosure No. 3);
4. Copies of case materials received from the US Department of Justice on 9 pages (Enclosure No. 6).

Enclosure in total: on 13 pages.

**Investigator for Major Cases**
**Prosecutor General's Office**
**of the Russian Federation**

**Justice Adviser**        /signed/        Z.Z. Lozhis



Translated into English by M. German

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST　　　　)
FROM RUSSIA　　　　　　　　　　　)
IN THE MATTER OF　　　　　　　　) Misc No. 07-
PANAVTO　　　　　　　　　　　　　)

ORDER

Upon application of the United States of America; and upon examination of a letter of request from Russia whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Russia and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Russian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Russia, which procedures may be specified in the request or

provided by the Russian authorities;

   4. seek such further orders of this Court as may be necessary to execute this request; and

   5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Russian authorities.

   IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

   Dated:  This _____ day of _____, 2007.

               _____
               United States District Court Judge

2